**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| JEFFREY MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | )  Case No. |
| v. | ) |
| | ) |
| QUAD CITY SAFETY, INC. | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

**NOW COMES** Plaintiff Jeffrey Miller ("Miller" or "Plaintiff"), by and through his attorneys, Steve A. Miller, of Fisher & Phillips LLP, and complains against Defendant Quad City Safety, Inc. ("QCS" or "Defendant"), as follows:

**JURISIDCTION, VENUE AND PARTIES**

1. This action is instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., and the Iowa Civil Rights Act, Iowa Code § 216.6A, *et seq*.

2. Accordingly, this Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 (federal question).

3. This Court has jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's Iowa Civil Rights Act and common-law claims because those claims are so related to the federal ADA claims that they form part of the same case or controversy under Article III of the United States Constitution (supplemental jurisdiction).

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District (including in Davenport, Iowa).

5. Defendant QCS is a corporation organized under the laws of the State of Iowa.

1

6. QCS is a distributor of safety products for employers.

7. QCS is headquartered in Davenport, Iowa.

8. Plaintiff was an employee of Defendant from May of 1994 to October 21, 2021. In this time with Defendant, Defendant employed Plaintiff as an Outside Salesman.

9. Plaintiff timely filed a complaint regarding the matters stated herein with the Iowa Civil Rights Commission and with the Equal Employment Opportunity Commission. Plaintiff has requested an administrate from each agency and received one from the Iowa Civil Rights Commission. Plaintiff now files this Complaint within 90 days of having received such "right-to-sue" letters.

## FACTS

10. During all times relevant to this Complaint, QCS employed Plaintiff as an Outside Salesperson.

11. Plaintiff's job performance as an Outside Salesperson met and exceeded Defendant's legitimate expectations.

12. During the last few years of Plaintiff's employment with QCS, Plaintiff experienced physical and verbal abuse from owner Mr. Michael Smeaton, Jr. This abuse included a physical assault, physical intimidation, curse-laden rants, belittling conversations, lack of support, and being perpetually ignored.

13. Plaintiff had reported to the other owner Dave White the inappropriate conduct and the negative and harmful impact these behaviors were having on his mental and physical health to no avail. During this time Dave White was aware that Plaintiff suffered from high blood pressure and hypertension.

14. Additionally, starting in or around May 2020 and continuing through October 2021, Plaintiff continually requested assistance with Plaintiff's workload and other workplace accommodations due to Plaintiff's disability (high blood pressure/hypertension).

15. Specifically, Plaintiff informed QCS's owner Dave White of Plaintiff's disability and that without accommodations Plaintiff's health would continue to deteriorate.

16. QCS denied Plaintiff's requests for a reasonable accommodation.

17. Then, in May 2021, Plaintiff suffered a stroke. After suffering the stroke, Plaintiff continued to request assistance with his workload and other accommodations due to concerns that it was impacting Plaintiff's medical condition and health.

18. QCS refused Plaintiff's request any reasonable accommodations without engaging in any interactive process or dialogue.

19. Additionally, after Plaintiff's stroke, QCS isolated and ignored Plaintiff. For instance, Dave White stopped responding to Plaintiff's e-mails and, on the few occasions where he did respond, the responses would be delayed by weeks.

20. This isolation and the refusal to provide assistance exacerbated Plaintiff's condition and interfered with Plaintiff's ability to perform his job.

21. That similarly situated employees who did not have a stroke or hypertension and/or who did not request reasonable accommodations due to disability were treated more favorably than Plaintiff.

22. That on October 21, 2021, due to QCS's conduct, Plaintiff was constructively discharged. No reasonable person in Plaintiff's position would have been able to continue working under these conditions.

23. That the harassment was unwanted, uncomfortable, and substantially interfered with Plaintiff's ability to perform Plaintiff's job.

24. Defendant subjected Plaintiff to inferior terms and conditions of employment because of Plaintiff's disability and requested reasonable workplace accommodations.

<b><u>COUNT I:</u></b><br><b><u>DISABILITY DISCRIMINATION (HOSTILE WORK ENVIRONMENT/DISCRIMINATORY TREATMENT)</u></b>

25. Plaintiff repleads and realleges each and every material allegation set forth above and incorporates the same by reference herein.

26. Plaintiff was protected by the ADA and Iowa Civil Rights Act because he was "an individual with a disability" in that:

   a. He had physical impairments that had arisen from having hypertension, high blood pressure, and having suffered a stroke (and its treatment) that had, at their worst, substantially limited one or more major life activities (including but not limited to standing, walking, bending, squatting, lifting, and self-care);

   b. He had a record of such impairments; and/or

   c. His employer regarded him as having such impairments.

27. As of 2019 and continuing through October 21, 2021, Plaintiff was "qualified" for his position with QCS in that Plaintiff satisfied the requisite skill, experience, education and other job-related requirements of the position he held, and he could perform the essential functions of his position, with or without reasonable accommodation.

28. Defendant subjected Plaintiff to a hostile work environment because of Defendant's disability.

FP 44841184.4

29. Defendant's actions and disability discrimination resulted in Plaintiff's constructive discharge from Defendant.

30. As a direct and proximate result of Defendant's conduct, Defendant caused, and will continue to cause, Plaintiff to suffer damages for lost wages, physical pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT II:
## DISABILITY DISCRIMINATION (FAILURE TO ACCOMMODATE)

31. Plaintiff repleads and realleges each and every material allegation set forth above and incorporates the same by reference herein.

32. At all relevant times Plaintiff was an "employee" of Defendant within the meaning of the ADA.

33. Plaintiff suffers from multiple serious health conditions that substantially limit one or more major life activities. Such conditions are a "disability" within the meaning of the ADA and Iowa Civil Rights Act.

34. Plaintiff has a history of these serious medical conditions, and even when not presently experiencing symptoms related to his physical health disorders, he has a record of having this disability and/or is perceived as having a disability.

35. At all relevant times Plaintiff was qualified for his position with Defendant and could perform the essential functions of the position with or without a reasonable accommodation.

36. Rather than engaging in the interactive process the ADA requires, Defendant refused to consider or otherwise respond to Plaintiff's reasonable accommodation requests.

37. Defendant further subjected Plaintiff to disability discrimination by denying Plaintiff's requests for reasonable work place accommodations necessary for him to perform his job.

38. The accommodations sought by Plaintiff would have enabled Plaintiff to continue to effectively perform the essential functions of his job.

39. Defendant's failure to provide Plaintiff with the requested accommodations or engage in good faith in the interactive process required, resulted in Plaintiff's constructive discharge.

40. Defendant failed to make reasonable accommodations for Plaintiff's known disability-related limitations in violation of Defendant's obligations under the ADA and Iowa Civil Rights Act.

41. As a direct and proximate result of Defendant's conduct, Defendant caused, and will continue to cause, Plaintiff to suffer damages for lost wages, physical pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT III:
## DISABILITY DISCRIMINATION (RETALIATION)

42. Plaintiff repleads and realleges each and every material allegation set forth above and incorporates the same by reference herein.

43. Defendant took adverse employment actions against Plaintiff based on the need to make reasonable accommodations for Plaintiff's disability in violation of the ADA and Iowa Civil Rights Act.

44. Defendant retaliated against Plaintiff for requesting reasonable workplace accommodations for his disability by ostracizing Plaintiff in the workplace, not responding to

Plaintiff's communications, and subjecting him to an increased hostile work environment, resulting in Plaintiff's constructive discharge.

45. Defendant's retaliatory actions would deter a reasonable employee from requesting workplace accommodations due to their disabilities.

46. As a direct and proximate result of Defendant's conduct, Defendant caused, and will continue to cause, Plaintiff to suffer damages for lost wages, physical pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT IV:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47. Plaintiff repleads and realleges each and every material allegation set forth above and incorporates the same by reference herein.

48. Defendant's owners intentionally and purposefully engaged in the abusive and belittling conduct directed to Plaintiff from in or around 2017 through October 2021 either intending Plaintiff to suffer severe emotional distress or in reckless disregard to the probability that their conduct would in fact cause Plaintiff to suffer severe emotional distress.

49. Plaintiff complained to Defendant's ownership regarding the abusive conduct and the impact it was having on Plaintiff's medical condition to no avail.

50. Defendant's owners knew that knew that their harassing, offensive and demeaning conduct carried with it a substantial likelihood that Plaintiff would sustain a psychological injury

51. As a result of Defendant's harassing, offensive and demeaning conduct, Plaintiff suffered a stroke and experiences severe emotional distress.

52. Defendant's owners' conduct was extreme and outrageous.

FP 44841184.4

53. Defendant's owners' conduct was and was willful, wanton and in reckless disregard of the right of Plaintiff to be free from such workplace attacks and humiliation causing him to sustain extreme emotional distress and psychological harm which should require Defendant to pay punitive damages in addition to compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

(a) For a trial by jury;

(b) For a finding that Defendant violated Plaintiff's rights as set forth herein;

(c) Judgment for all damages, lost wages, benefits, expenses, or other compensation Plaintiff lost as a result of Defendant's violations of the ADA, Iowa Civil Rights Act, and common-law;

(d) Judgment for all damages for Plaintiff's mental and emotional suffering, other pain and suffering, and out of pocket losses suffered as a result of Defendant's violations of the ADA, Iowa Civil Rights Act, and common-law;

(e) Judgment ordering reinstatement of Plaintiff or an award of front pay equivalent to the pay and benefits Plaintiff would likely have earned were it not for Defendant's unlawful acts;

(f) Judgment awarding pre-judgment and post-judgment interest on all unpaid wages or other damages from the date such wages were earned and due or such damages were incurred;

(g) Judgment awarding Plaintiff punitive damages;

(h) Judgment awarding Plaintiff's reasonable attorneys' fees and expenses of litigation; and

(i) All other equitable and other further relief as this Court deems proper and just.

## PLAINTIFF'S JURY DEMAND

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: August 10, 2022                                             Respectfully submitted,

By:   */s/ Steve A. Miller*
      Steve A. Miller
      AT0012083
      **FISHER & PHILLIPS LLP**
      10 South Wacker Drive, Suite 3450
      Chicago, Illinois 60606
      (312) 346-8061 Phone
      (312) 346-3179 Facsimile
      smiller@laborlawyers.com